Sutton v. Huffman.

---

## EMANUEL SUTTON v. AARON HUFFMAN.

1. In an action brought by a father for loss of service occasioned by the seduction of his daughter, it is necessary to show that the father and daughter stood in the relation of master and servant at the time of committing the injury by the defendant. The loss of service may be small, but the fact of such loss must be proved in order to sustain the action.
2. Any accustomed service lost to the father will be sufficient, provided it be service due, and not merely voluntary.
3. It is not necessary the daughter should be in the actual service of the father at the time of the seduction. If the relationship of master and servant still existed, and the loss of service occurred afterwards, it will sustain the action.
4. The arrival at the age of twenty-one years does not emancipate a child, if the parent continue to exercise authority, and the child to submit to it. Emancipation is a matter of fact to be determined by the circumstance of the case, and the intention of the parties.

---

Action on the case, *per quod*, &c., and error to the Circuit Court of Hunterdon county.

The action was brought by the father for loss of service, occasioned by the seduction of his daughter.

It appeared in evidence that the daughter was about

Sutton v. Huffman.

twenty-two years of age when the injury was committed, and was living a part of the time with her brother, who occupied a farm about a mile from her father, and part of the time with her father. She did not receive wages from her brother, and when at home worked for her mother, and the father bought her clothing. The child was born at her father's house, and he paid the physician's bill.

The jury found a verdict for the plaintiff. The defendant excepted to the charge of the court, and removed the case by writ of error into this court, where it was argued upon the several errors assigned, before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH, and BEDLE.

For the plaintiff in error, *A. V. Van Fleet* and *A. Wurts.*

For the defendant, *J. T. Bird* and *B. Van Syckel.*

The opinion of the court was delivered by

BEDLE, J. The exception in this case being so general, and the charge depending so much upon its application to the facts, it becomes necessary, in order to determine its correctness, to state the evidence pretty fully. The action was brought by Adam Huffman, for the seduction of his daughter and servant, Margaret Ann, by Emanuel Sutton. As the result of it, a child was born on the eleventh day of April, 1861. The daughter, at the time of the seduction, was about twenty-two years of age, and the act occurred, not at her father's house, but at her brother Gilbert's, who lived about a mile from the father's. Gilbert was an unmarried son of the plaintiff, and lived upon a farm called the Sutton farm, which appears to have been owned by the defendant's father. In the spring of 1859, Gilbert left his father's house to commence farming for himself, and first occupied what is called the Cranmer farm. Margaret Ann went with him, she then being under the age of twenty-one years. He remained upon said farm one year, and then moved upon the Sutton farm. The plaintiff testified that

Gilbert rented the Cranmer farm, moved on it, and was single, and had no housekeeper; and that he told him he could have Margaret Ann whenever they could spare her. That she did not go there to receive wages; that she was with Gilbert a good part of the time there, and was at home some; that she came home very often on Saturdays and staid over Sunday, and sometimes would be at home nearly two weeks; that while Gilbert lived on the Sutton farm, she was about half the time there and the other half at her father's house; that she had part of her clothing at Gilbert's, but the chief part was at the plaintiff's house; that she had to have part at each place; that when she was at her father's, she did whatever her mother told her; that she milked, churned, got the meals, did housework, washing, and sewing; that the plaintiff did not pay her any wages, except such clothes as she needed, and he found her all her clothing, both while she was on the Cranmer farm and the Sutton farm; that her mother would send her shirts to make, and dresses for her sister. (The father's family consisted of his wife and ten children, eight boys and two daughters—Margaret Ann, and her sister, who was nine years old.) That the child was born at the plaintiff's house, the physician's bill was paid by him, and he furnished her with everything necessary for her comfort during sickness, and considered himself bound to do it. These leading facts were also substantially testified to by Gilbert and Margaret Ann. In addition to them, Margaret Ann and Gilbert swear that Gilbert did not pay her any wages, and there was no agreement that he should. Margaret Ann testified that she always went to Gilbert's with the intention of returning to her father's, and that she was subject to the control and direction of her father while on the Cranmer and Sutton farms. The defendant sought to show, by the declarations of Margaret Ann and Gilbert, that Gilbert was to give her one dollar per week and half the poultry. Other evidence was offered by defendant to show that while on the Cranmer farm she had certain nice dresses there; also that Margaret Ann and Gilbert would sometimes go to

the store and each purchased things and be charged to Gilbert, the particulars of which do not appear; also that some shoe-making was done for her and charged to Gilbert. This evidence, together with some other of a general character, was offered, undoubtedly, to show that the relation of master and servant did not exist between the plaintiff and his daughter, but that she had left her father's house to do for herself.

A general exception was allowed to the whole charge upon the relationship of master and servant, which charge includes the observations of the justice both upon the facts and the law. I will refer to such parts of the charge only as are objected to upon legal grounds.

The court charged that "it is necessary for the plaintiff to prove that she stood to him in the relation of servant, and that the defendant seduced and debauched her.

"*And First.* Did the relation of master and servant exist between the father and daughter? This form of issue is adapted to the cause of loss of service merely, and was no doubt, in its origin, used to recover only the damages sustained by such loss and the expenses of the accompanying sickness. But in cases of this kind, the loss of service has long ceased to be considered the true *gravamen* of the action. The real damages sought to be recovered, are those occasioned, not by two or three months illness of the daughter, but the permanent disgrace inflicted upon her and her family, and thus subjecting the father to permanent sorrow. Notwithstanding this change in the object of the action, the form still continues, *and though the amount of service may be very small, still the fact must be proved in order to sustain it.* In its present scope, this action is the only civil remedy for this kind of trespass. Your doubts, if you entertain any upon the first point, may be solved by answering two questions.

"*First.* Did Margaret render any habitual service at or about the time she was debauched?

"*Second.* Was she emancipated?

"As to the first question, if you believe her father, brother

and herself, you cannot doubt that she did serve him at his home occasionally, in the usual way of service by daughters at home, and by sewing for the family while at her brother's. The service need, not be of any particular kind, quality, or amount. Was *any* service lost by the injury, is the question. It need not be menial service, which in law means within walls, or house service, nor need it be continuous, or from day to day, nor need the daughter live in the family if she serves out of it. *In short, any accustomed service lost by the injury* will sustain the action, provided it be *service due*, and not a mere voluntary courtesy, and service will be regarded as due, unless the child is emancipated.

"*Second.* Was Margaret emancipated? The arrival at twenty-one years does not emancipate a child; if the parent continues to exercise authority and the child to submit to it, the emancipation does not occur; and this is the case with most unmarried daughters, whose parents are able to support them."

After referring to the evidence generally, and reflecting upon it, the court then stated to the jury that emancipation was a *question of intention*, and further said: "With these suggestions, I leave it with you to determine, whether Margaret or her father, or either of them, intended that she should be free of his control, and without title to his support and protection at *the time of the injury.* I do not think that the fact that she received wages, or by agreement between her and Gilbert, was to receive wages, if that was so, of much, if any, importance to the question. This was a matter between her and Gilbert, and does not affect her position toward her father, unless she engaged her whole time to Gilbert, and that for a period that would indicate her intention to be free from her father. The proof will hardly sustain this view. You have that testimony before you, and must give it such weight as you think it deserves. It consists altogether of hearsay of what Gilbert and Margaret said. It is only important with the view of impeaching them, and not of proving the fact against the plaintiff; as against him it is hearsay."

It is first objected that the question, "did the relation of master and servant exist between the father and daughter?" does not specify the time when such relation should exist. This objection is more technical than real. Immediately before putting that question, the court charges that "it is necessary for the plaintiff to prove that she stood to him in the relation of servant, and that the defendant seduced and debauched her." The jury could not have understood from this language otherwise, than that the daughter must be the servant at the time of the seduction. The expression cannot fairly be construed to mean anything else; and besides that, the court in submitting the question of emancipation to the jury, expressly applies it "at the time of the injury." If the defendant desired it more definite than stated, he should have requested it at the trial.

The other objections amount in brief to this: that Margaret, at the time of the seduction, was over the age of twenty-one years, and in the actual service of her brother for wages, and that, therefore, she could not then be the servant of her father, so as to sustain this action. In the first place, it is not proved that she did receive wages from her brother. As was correctly remarked by the judge at the circuit, the proof of what Gilbert and Margaret had said about that was "only important with the view of impeaching them, and not of proving the fact against the plaintiff; as against him it is hearsay;" but then if there had been competent evidence of the fact that she received wages, that in itself was not necessarily inconsistent with the relation of master and servant between her and her father. *Brown* v. *Ramsay*, 5 *Dutcher* 121. It was not necessary that she should be in the *actual service* of the father at the time of the seduction, if the relation of master and servant then existed. It is true, that loss of service in fact, though very slight, must be shown, where the daughter is over twenty-one years, the law not presuming service, as in a daughter under age, yet the loss of service, in most cases where there is no personal violence, occurs months after the seduction. If the relation

of master and servant existed at the time, and the service lost afterwards was due the parent by virtue of such relationship that existed at the seduction, it is sufficient to sustain the action. If, by reason of the act, the master could not have the benefit of a service due him, by virtue of a relation then existing, even if he did not choose to exact it before, he is entitled to his action. The receipt of wages by the daughter would be a fact as bearing upon the question of emancipation, but beyond that it would not be inconsistent with the child being unemancipated, unless, as remarked by the judge, " she engaged her whole time to Gilbert, and that for a period that would indicate her intention to be free from her father." It does not so appear in the case, and the court wisely said, "the proof made will hardly sustain that view." As this case stands upon the evidence, the receipt of wages, if proved, would not be inconsistent with Margaret being unemancipated and the servant of the plaintiff.

When the daughter went to her brother's, she was under the age of twenty-one years; while there she attained the age of twenty-one. The attaining that age is not *ipso facto* an emancipation of the child. That is the well-settled law of this state. *Overseers of Alexandria* v. *Overseers of Bethlehem*, 1 *Harr.* 122; *Ridgway* v. *English*, 2 *Zab.* 409; *Brown* v. *Ramsay*, 5 *Dutch.* 117.

It is true that the father may then refuse to further support and provide for the child, and the child may then refuse to serve or submit to the control of the parent, but unless either the parent or child has in fact effected the emancipation, the reciprocal rights and duties of the parent and child, as to service and support, are presumed to exist as before the age of twenty-one. Whether emancipation has occurred, is a question of fact, to be determined by the circumstances of the case, according to the intention of the parties. Such circumstances in favor of a continuance of the relation, may consist of a tacit consent on the part of the child to serve as before, and on the part of the parent to provide as before. The conduct of each to the other may exist as before without any special contract, or understanding, and emancipation would not be accomplished. The parent or child, or either of them, may stand upon their rights to dissolve

the relation at that time, if they wish, and if they do, in fact, the relation of master and servant is ended, but if they do it not in fact, and they tacitly continue—the child to submit to the authority of the parent, and to serve him in such way as is usual for children, and the parent to exercise authority and provide for the child as before—the child is unemancipated, and third parties are bound to respect it. *Lipe* v. *Eisenlerd*, 5 *Tiffany*, (32 *N. Y. Rep.*) 229.

The question of emancipation, as one of fact, was distinctly left by the judge to the jury, and I find nothing in the charge inconsistent with the rule of law as laid down. The facts, as they appear in the case, would justify the jury in finding the daughter not emancipated. If she was not emancipated, then the action would be sustained by proof of loss of any service to which the plaintiff was entitled. Upon that point the judge charged "that any service lost by the injury is the question;" and further, "in short, any accustomed service lost by the injury will sustain the action, provided it be service due, and not a mere voluntary courtesy, and service will be regarded as due unless the child is emancipated." If the child was not emancipated, service performed will be regarded as due the parent. The parent can sustain the action for the services of an unemancipated child over twenty-one years. *Brown* v. *Ramsay*, 5 *Dutcher* 118.

In the absence of proof that the parent and child, in the performance of service by the child, had contracted with each other, as strangers, the law holds that service done by an unemancipated child is done because it is due to the parent. The service, as already stated, need not be rendered on the day of the injury. If the injury had occasioned any loss of service due by virtue of the relation, though the loss has been sustained long after the injury, it is sufficient. The charge upon this question was entirely correct. It was objected that the question, "did Margaret render any habitual service at or about the time she was debauched?" should have been confined to the time of the debauchment. This objection is already sufficiently answered, for the case

Overseers, &c., of township of Bethlehem, v. Overseers, &c., of Alexandria.

does not proceed upon the idea that actual service is necessary at that time. The fact of habitual service about the time she was debauched, was important, as showing the relation of the child to the parent—how they were accustomed to act towards each other. If before the seduction, and after, as was proved by the plaintiff, she did serve her father when at home, in the usual way of a daughter, and did also serve him at her brother's, by sewing for her father's family, it showed a recognition on her part of the continuance of the relationship that existed before she was of age. These acts of service, covering the time she was at Gilbert's, or about the time of the seduction, were of the utmost importance upon that subject.

The two questions—one as to the habitual service, and the other as to emancipation—cover the whole case upon the relation of master and servant. The judge expressly stated, their doubts, if they had any upon that question, could be solved by answering those two questions, and those questions were correctly put and explained to accomplish that end. I see no error in the charge, and the judgment must, therefore, be affirmed.

Judgment affirmed.

Chief Justice BEASLEY, and Justices ELMER and VREDENBURGH concurred.

CITED in *Wert* v. *Strouse*, 9 *Vr.* 189.